IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| THE TIDES COMMODITY TRADING GROUP, INC.<br><br>Plaintiff,<br><br>v.<br><br>INTERGLOBAL PRODUCTS, INC.,<br><br>Defendant. | Civil Action No.: |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff The Tides Commodity Trading Group, Inc., ("Tides") hereby asserts its Complaint against Defendant InterGlobal Products, Inc. ("InterGlobal"), and respectfully shows the Court as follows:

PARTIES, JURISDICTION & VENUE

1

Tides is a corporation organized and existing pursuant to the laws of the State of South Carolina, with its principal place of business in the city of Charleston, Charleston County, South Carolina. Tides is an importer and supplier of conventional and organic industrial food ingredients.

2

InterGlobal is an international goods procurement broker. On information and belief, InterGlobal is a Florida corporation with its principal office and place of business at 37809 Howard Avenue, Dade City, FL 33525.

3

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship and an amount in controversy greater than $75,000.

4

This Court has personal jurisdiction over InterGlobal because InterGlobal is a Florida citizen and resident that regularly conducts business in Florida. Additionally, the claims in this lawsuit arise out of acts and events performed by InterGlobal in relation to a contract created in Florida. Venue is proper because InterGlobal's primary office and place of business is located in Pasco County, which is within the Middle District of Florida, Tampa Division.

FACTUAL BACKGROUND

5

On or about May 21, 2015, Tides and InterGlobal entered into a valid and binding contract (the "Contract"). The Contract provided that InterGlobal would sell kosher, food-grade "organic black chia" of Bolivian origin to Tides for a total cost of $264,554.40. The parties agreed that the seed would be shipped "FOB Delivered," *i.e.*, that InterGlobal would assume all risk of damage or loss until the seeds were received by Tides.

6

The parties agreed to divide the order into five (5) separate shipments. InterGlobal would store each arriving shipment at the "Hillside Warehouse" in Edison, New Jersey until Tides arranged to pick it up.

7

The second shipment of the Contract called for Tides to pick up 1,000 bags of organic black chia at the Hillside Warehouse.

8

At InterGlobal's request, Tides pre-paid the $52,910.88 contract amount for the second shipment.

9

On August 8, 2016, a Tides trucking contractor picked up the chia seed at the Hillside warehouse, which InterGlobal had pre-packaged onto twenty (20) pallets. Each of the pallets was wrapped with cardboard and shrink-wrapped.

10

Unbeknownst to Tides or its contractor, at the time of pickup the chia seed bags were contaminated by rodent feces and rodent urine. In some pallets, rodents had even chewed holes in the chia seed bags. Tides is informed and believes that the contamination of the chia seed occurred while the pallets were in InterGlobal's care at the Hillside Warehouse.

11

Lacking knowledge of the contamination, Tides' trucker transported the contaminated pallets to their destination, a food storage warehouse in St. Peter, Minnesota.

12

When the truck was unsealed at the food storage warehouse in St. Peter on August 10, 2016, workers observed signs of rodents and rodent droppings in and on the pallets. The warehouse workers refused to unload the truck for fear of contaminating the receiving warehouse.

13

Tides immediately communicated to InterGlobal its rejection of the twenty (20) pallets. On August 10 and August 11, Tides requested that InterGlobal provide direction on what to do with the rejected shipment. InterGlobal refused to accept the rejected shipment or to provide further directions.

14

As a result of InterGlobal's failure to provide instructions, on August 12 Tides shipped the contaminated goods to a third-party warehouse so that the cargo load could be inspected and the full extent of the contamination revealed.

15

The third-party auditor found that the contamination was pervasive and determined that it arose while the seed was in InterGlobal's care. The auditors found rodent feces, rodent urine and rodent chew holes in numerous pallets.

16

Tides communicated these findings to InterGlobal on August 16, renewed its rejection of the seed, and again requested direction. InterGlobal did not respond.

17

On August 17, the auditor discovered an insect infestation in the pallets, rendering the shipment an active health and safety hazard. Tides immediately communicated these findings to InterGlobal and requested direction. InterGlobal did not respond.

18

On August 19, the auditor informed Tides and InterGlobal that due to the rodent contamination and insect infestation the shipment must be removed from the auditor's warehouse by the end of that day. Because Tides was unable to ship or receive infested products, and unable to resell it, Tides requested that the auditor dispose of the seed, copying InterGlobal on the electronic mail communication.

19

InterGlobal's failure to deliver conforming goods and its conduct in responding to the contamination substantially impaired the value of the contract as a whole.

20

Based on InterGlobal's failure to properly store the chia seed at the Hillside Warehouse, InterGlobal's production of contaminated goods, its refusal to remedy an obvious defect in performance, and its failure to communicate with Tides throughout the contamination management process, on August 29, 2016, Tides requested, through counsel, that InterGlobal provide assurance within ten (10) business days that InterGlobal

would perform its future obligations under the Contract. InterGlobal, through counsel, responded on September 7, 2016, but failed to provide any such assurance, thereby repudiating the Contract.

21

InterGlobal agreed in the Contract that "[I]N THE EVENT OF A DISPUTE, TIDES RECOVERY SHALL INCLUDE THE COSTS INCURRED IN PURSUING SAID RECOVERY INCLUDING ATTORNEY FEES."

22

As a result of the Defendant's conduct set forth above, the Plaintiff has suffered damages in the amount of $168,977.69, not including interest: $52,910.88 for the pre-paid sale amount of the contaminated chia seeds; $1,550.00 for the cost to transport the seeds; $600.00 to re-ship the seeds to the auditor; $4,068.50 for the auditor to unpack and inspect the seeds; $5,108.50 in costs to repack, transport, and destroy the seeds; $6,613.88 in costs to obtain substitute seed to cover the contaminated second shipment; $88,625.93 in additional costs to obtain equivalent goods as a result of InterGlobal's repudiation and breach; and at least $9,500.00 in contractual attorney's fees. Tides has also suffered other costs due to the Defendant's wrongful retention of Tides' pre-payment, which damages are still accruing, in an amount to be proven at trial.

### COUNT ONE—BREACH OF CONTRACT
### (NONCONFORMING GOODS)

23

Tides re-alleges paragraphs 1 to 22, above, as if fully set forth here.

24

Tides and InterGlobal entered into a binding and enforceable contract for the sale of food-grade, kosher, organic black chia seeds at the cost of $264,554.40. Tides pre-paid the contract amount for the second shipment, $52,910.88.

25

All conditions precedent to the Plaintiff's enforcement of the Contract have been satisfied or performed.

26

The Defendant breached the contract by failing to supply conforming goods, namely food-grade, kosher chia seeds. The seeds were contaminated by rodent urine and feces and infested with insects.

27

As a result of the Defendant's breach, the Plaintiff has suffered damages in the amount of $80,351.76, not including interest. Tides has also suffered other additional costs, which damages are still accruing, in an amount to be proven at trial.

COUNT TWO—BREACH OF CONTRACT
(REPUDIATION)

28

Tides incorporates paragraphs 1 to 27, above, as if fully set forth here.

29

Tides and InterGlobal entered into a binding and enforceable contract for the sale of food-grade, kosher, organic black chia seeds at the cost of $264,554.40.

30

All conditions precedent to the Plaintiff's enforcement of the Contract have been satisfied or performed.

31

The Defendant breached the Contract by failing to deliver conforming goods and failing to properly secure the Hillside Warehouse, as set forth above. Furthermore, during the pendency of the crisis, the Defendant ignored Tides' communications and failed to meaningfully participate in managing the contaminated goods. Given such circumstances, Tides was placed in reasonable doubt as to whether Tides could count on Defendant to properly store future chia shipments and whether, in the event of a problem in future shipments, Tides could count on the Defendant to fulfill its obligations under the Contract.

32

Tides, lacking reasonable assurance that the Defendant would or could perform its remaining obligations under the Contract, justifiably requested assurance from the Defendant for the same on August 29, 2016.

33

The Defendant's September 7, 2016 correspondence did not provide any such assurance, nor has Defendant provided any such assurance to date.

34

Defendant's failure to provide adequate assurance effected a repudiation of the Contract. This repudiation breached the Defendant's obligations under the Contract.

35

As a result of the Defendant's repudiation and breach, the Plaintiff has suffered damages in the amount of at least $88,625.93 in costs incurred to obtain a replacement seed vendor.

36

Tides has also suffered other costs due to the Defendant's breach and repudiation, which damages are still accruing, in an amount to be proven at trial.

COUNT THREE—BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

37

Tides incorporates paragraphs 1 to 22, above, as if fully set forth here.

38

InterGlobal, a merchant, sold Tides 1,000 bags of organic black chia seeds. Such goods were not merchantable at the time of sale because they were contaminated by rodent droppings.

39

Tides suffered injury from the sale of such goods arising from the rodent contamination, which contamination rendered the chia seeds unusable and worthless.

40

Tides immediately notified InterGlobal of Tides' injury and its rejection of the goods.

## COUNT FOUR—BREACH OF IMPLIED WARRANTY
## OF FITNESS FOR A PARTICULAR PURPOSE

41

Tides incorporates paragraphs 1 to 22, above, as if fully set forth here.

42

At the time of contracting, InterGlobal had reason to know the particular purpose for which the chia seed was required, namely that the chia seed must be kosher and food-grade.

43

Tides relied on InterGlobal's skill or judgment as an international goods procurement broker to select and furnish goods suitable for that purpose.

44

InterGlobal knew or had reason to know that Tides was relying on InterGlobal's skill or judgment to select and furnish kosher and food-grade chia seed.

45

Tides suffered injury from the sale of such goods arising from the rodent contamination, which contamination rendered the chia seeds unusable and worthless.

46

Tides immediately notified InterGlobal of Tides' injury and its rejection of the goods.

## COUNT FIVE—BREACH OF EXPRESS WARRANTY

47

Tides incorporates paragraphs 1 to 22, above, as if fully set forth here.

48

InterGlobal expressly affirmed, promised, and described that the organic black chia seeds sold pursuant to the Contract were kosher and food-grade.

49

This warranty became the basis of the bargain for the product. Without this warranty, the product was useless to Tides.

50

InterGlobal breached this warranty by selling Tides chia seeds that were contaminated by rodent feces and rodent urine. Contaminated chia seeds are neither food-grade nor kosher.

51

Tides suffered damages, in particular the complete loss of the shipment, and costs to verify the contamination and dispose of the contaminated goods, that were proximately caused by InterGlobal's breach of the warranty.

COUNT SIX—UNJUST ENRICHMENT

52

Tides incorporates paragraphs 1 to 4 and 7 to 22, above, as if fully set forth here.

53

Tides conferred a benefit on the Defendant in the amount of at least $52,910.88, which benefit was realized by Defendant due to Tides' pre-payment for the sale of organic black chia seeds.

54

Tides also conferred a benefit on the Defendant in the amount of at least $17,940.88, which benefit was realized by Defendant by not paying for the transportation, inspection, and destruction of its contaminated chia seeds, and which costs were borne by Plaintiff as a result of Defendant's intransigence.

55

Because the chia seeds were contaminated by rodent feces and urine while in InterGlobal's care, such that they were essentially worthless to Tides, it would be inequitable and unjust for Defendant to retain these benefits, as well as others that may be proven at trial, without paying for them.

PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that the court award the following relief:

1. Enter a judgment in favor of the Plaintiff and against the Defendant for compensatory damages, including contractual attorney's fees in the sum of at least $168,977.69;
2. Additional general and special damages that may be proven at trial;
3. Interest pursuant on all outstanding accounts from the date of Defendant's breach to the date of judgment;
4. Tax the costs of this action against the Defendant;
5. Award to the Plaintiff its reasonable attorney's fees, costs, and expenses incurred in prosecuting this action;

6. Grant a trial by jury on all issues so triable; and

7. Award such other and further relief in favor of the Plaintiff as the court deems just and appropriate.

Respectfully submitted this 12th day of October, 2016.

_____
Robert Sowell
Florida Bar No. 113615
BAKER & HOSTETLER, LLP
Suntrust Center
200 South Orange Avenue
Suite 2300
Orlando, FL 32801-3443
Telephone: (407) 649-4032
rsowell@bakerlaw.com

Eric L. Barnum
*(pro hac vice to be filed)*
Georgia Bar No. 039305
Kevin D. Bradberry
*(pro hac vice to be filed)*
Georgia Bar No. 532880
BAKER & HOSTETLER, LLP
1170 Peachtree Street, NE, Suite 2400
Atlanta, Georgia 30309-7676
Telephone: (404) 256-8783
Facsimile: (404) 459-5734
ebarnum@bakerlaw.com
kbradberry@bakerlaw.com