**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

THE TIDES COMMODITY
TRADING GROUP, INC.
     Plaintiff

v.                               Civil Action No.: 8:16-cv-2914-EAK-MAP

JACK R. WEST, an individual doing business as
INTERGLOBAL PRODUCTS;
2SKEBENGAS COMPANY,
a corporation doing business as
INTERGLOBAL PRODUCTS; and
JUSTIN WEST, an individual doing business as
INTERGLOBAL PRODUCTS,
     Defendants/Third Party Plaintiffs,

v.

HILLSIDE WAREHOUSE & TRUCKING CO., INC.
     Third Party Defendant.

**DEFENDANTS' AMENDED THIRD PARTY COMPLAINT**

Defendants/Third-Party Plaintiffs, JACK R. WEST, an individual doing business as

INTERGLOBAL PRODUCTS; 2SKEBENGAS COMPANY, a corporation doing business as

INTERGLOBAL PRODUCTS; and JUSTIN WEST, an individual doing business as

INTERGLOBAL PRODUCTS, and each of them, state as follows:

COMMON ALLEGATIONS

1.    Defendants have been sued by Plaintiff, THE TIDES COMMODITY TRADING

GROUP, INC. ("Tides")

2.    Tides is a South Carolina corporation which imports food ingredients with its principal place of business in Charleston, South Carolina.

3.    Tides asserted in its First Amended Complaint that the Defendants contracted with Tides for the purchase of imported chia seed and breached that contract by providing contaminated seed in one of the shipments. A copy of the First Amended Complaint is attached as Exhibit "A."

4.    The three Defendants named in the suit are:

   a.    Jack R. West, an individual residing in Dade City, Florida who, according to Tides, was doing business as a fictitious entity known as InterGlobal Products;

   b.    2Skebengas Company, a Florida corporation doing business as a fictitious entity known as InterGlobal Products; and,

   c.    Justin West, an individual residing in Dade City, Florida who, according to Tides was doing business as a fictitious entity known as InterGlobal Products.

5.    The Amended Complaint alleged that these three disparate entities, Jack R. West, 2Skebengas Company and Justin West each were responsible for the actions of the fictitious entity "Interglobal Products" described in the six counts of the Complaint

6.    The Defendants answered the First Amended Complaint and a copy of the answers are attached as Exhibit "B."

7.    Jack R. West and Justin West denied any individual ownership of the fictitious entity identified in the Complaint as InterGlobal Products and denied responsibility for any of the allegations contained in the First Amended Complaint.

8.    2Skebengas Company, a Florida corporation doing business as a fictitious entity known as InterGlobal Products (hereafter referred to as "InterGlobal Products") admitted it contracted with Tides for the purchase of imported chia seed.

9.    InterGlobal Products also agreed that individual shipments of the chia seed would be stored at the warehouse of Hillside Warehouse & Trucking Co., Inc. ("Hillside") until Tides arranged to pick up the seeds.

10.    InterGlobal Products in turn entered into a written agreement  with Hillside for transportation of the chia seed from the Red Hook, New Jersey terminal to Hillside's warehouse facility in Edison, New Jersey and Hillside also agreed to provide for the storage of the chia seeds at the warehouse until picked up by Tides all at an agreed to price.  See Exhibit "C," attached hereto, which includes the written terms of the agreement..

11.    Hillside acknowledged, when it picked up the chia seed at the Red Hook terminal, that the shipment was received by it in good condition with no exceptions.

12.    None of the three named Defendants had any possession or control of the chia seeds after the seeds were picked up from the Red Hook terminal by Hillside.

13.    Tides has alleged that the chia seeds were contaminated when they were picked up by Tides' carrier from the Hillside warehouse.

14.    The three named Defendants are without fault, liability or negligence.

15.    If the chia seeds were contaminated it was not due to any actions of the three named Defendants but was due to the sole fault, liability or negligence of either Tides or Hillside.

COUNT ONE – CONTRACTUAL INDEMNITY

16.    InterGlobal entrusted the storage of the chia seeds to Hillside pursuant to the aforementioned written agreement.

17.    By agreeing to store the chia seeds in exchange for a specified rate of compensation, Hillside had an implied duty to discharge its contractual performance in connection with the storage of the chia seeds using reasonable care, in a skillful, diligent and competent manner.

18.   It was Hillside's responsibility to maintain the chia seeds in good condition free from any contamination while the seeds were in storage in its warehouse.

19.   Hillside had a duty to exercise such care in regard to the storage of the chia seeds as a reasonably careful person would exercise under similar circumstances.

20.   The Defendants have denied the chia seeds were contaminated and denied liability to the Plaintiff; but, Defendants assert that if the chia seeds are subsequently determined to be contaminated any such contamination occurred due to the breach of Hillside's contractual obligations.

21.   Accordingly, if any of the Defendants are found liable under any of the six counts alleged in the Amended Complaint, the Defendants are entitled to contractual  indemnification and/or contribution for Hillside Warehouse & Trucking Co., Inc.'s breach contributing to any alleged loss alleged in the First Amended Complaint.

WHEREFORE, to the extent Defendants/Third Party Plaintiffs are found liable for any amount of damages by the Plaintiff, Defendants/Third Party Plaintiffs are entitled to contractual indemnity from Third Party Defendants for any and all such amounts, plus costs and expenses incurred as a result of defending this claim.  Defendants/Third Party Plaintiffs further demand a jury trial on all issues raised in this Third Party Complaint.

COUNT TWO – COMMON LAW INDEMNIFICATION

22.   In the absence of a specific contractual agreement, Hillside's act of taking possession of the chia seeds created a duty to use reasonable care in regard to Hillside's storage of the chia seeds.

23.   The Defendants have denied the chia seeds were contaminated and denied liability to the Plaintiff; but, Defendants assert that if the chia seeds are subsequently determined to be

contaminated, then Hillside breached its duty of care and was negligent by failing to prevent the infestation or intrusion of vermin into the chai seed while stored at the Hillside warehouse facility.

24.    Accordingly, if any of the Defendants are found liable under any of the six counts alleged in the Amended Complaint, the Defendants are entitled to common law indemnification and/or contribution for Hillside Warehouse & Trucking Co., Inc.'s negligence contributing to any loss alleged in the First Amended Complaint.

**WHEREFORE,** to the extent Defendants/Third Party Plaintiffs are found liable for any amount of damages by the Plaintiff, Defendants/Third Party Plaintiffs are entitled to common law indemnity from Third Party Defendant for any and all such amounts, plus costs and expenses incurred as a result of defending this claim.  Defendants/Third Party Plaintiffs further demand a jury trial on all issues raised in this Third Party Complaint.

**MANDER LAW GROUP**

14217 Third Street
Dade City, Florida  33523
Tel:    (352) 567-0411
Fax:    (352) 567-8457

*/s/ A.R. Mander, III*
A. R. Mander, III, Esq.
Florida Bar No. 0230405
Primary Email:
arm4law@manderlawgroup.com
Secondary Email:
mwhite@manderlawgroup.com

Misty Morgan Vianna, Esq.
Florida Bar No. 0095219
Primary Email:
mvianna@manderlawgroup.com
Secondary Email:
mwhite@manderlawgroup.com
Attorneys for Defendants

## CERTIFICATE OF SERVICE

**I CERTIFY** that a copy of the foregoing has been furnished to Plaintiff's attorney,

Robert D. Sowell, BAKER HOSTETLER, LLP, by electronic mail delivery at

rsowell@bakerlaw.com and to Third Part Defendant's attorneys Lawrence J. Roberts and David

W. Smith by electronic mail to lroberts@lrobertsandassociates.com;

dsmith@lrobertsandassociates.com, respectively, on June 15, 2017.

> **MANDER LAW GROUP**
> 14217 Third Street
> Dade City, Florida 33523
> Tel:    (352) 567-0411
> Fax:    (352) 567-8457
>
> */s/ A.R. Mander, III*
> A. R. Mander, III, Esq.
> Florida Bar No. 0230405
> Primary Email:
> arm4law@manderlawgroup.com
> Secondary Email:
> mwhite@manderlawgroup.com
>
> Misty Morgan Vianna, Esq.
> Florida Bar No. 0095219
> Primary Email:
> mvianna@manderlawgroup.com
> Secondary Email:
> mwhite@manderlawgroup.com
> Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

THE TIDES COMMODITY TRADING
GROUP, INC.

        Plaintiff,

v.

JACK R. WEST, an individual doing
business as INTERGLOBAL PRODUCTS;
2SKEBENGAS COMPANY, a corporation
doing business as INTERGLOBAL
PRODUCTS; and JUSTIN WEST, an
individual doing business as
INTERGLOBAL PRODUCTS,

        Defendants.

Civil Action No.: 8:16-cv-2914-EAK-MAP

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff The Tides Commodity Trading Group, Inc., ("Tides") hereby asserts its

First Amended Complaint against Defendant Jack R. West, an individual doing business

as InterGlobal Products ("Jack West"); Defendant 2Skebengas Company, a Florida

corporation doing business as InterGlobal Products ("2Skebengas"); and Justin West, an

individual doing business as InterGlobal Products ("Justin West"), with regard to the

Defendants' joint and severable activities under the registered fictitious name InterGlobal

Products ("InterGlobal" or "InterGlobal Products"), and respectfully shows the Court as

follows:


EXHIBIT A

## PARTIES, JURISDICTION & VENUE

1

Tides is a corporation organized and existing pursuant to the laws of the State of South Carolina, with its principal place of business in the city of Charleston, Charleston County, South Carolina. Tides is an importer and supplier of conventional and organic industrial food ingredients.

2

Jack R. West is a Florida citizen and resides at 34701 Tranquiview Lane, Dade City, FL 33523. From August 30, 2010 to October 24, 2016, and at all times relevant to this Complaint, Jack West was the sole owner of the Florida registered fictitious name InterGlobal Products. Jack West holds himself out to the public as the President of InterGlobal Products, and is also the President and sole registered officer/director of 2Skebengas Company.

3

2Skebengas Company is an active Florida corporation incorporated under Document Number P01000064460 with Florida registration date of June 28, 2001. The principal address of 2Skebengas is 37809 Howard Avenue, Dade City, FL 33525. The President and sole registered officer/director of 2Skebengas is Jack R. West. The registered agent for 2Skebengas is David A. Townsend, Esq., who is located at the law firm of Townsend & Brannon, 608 W. Horatio Street, Tampa, FL 33606.

4

Justin West is a Florida citizen and resident. Justin West holds himself out to the public as the International Sales Manager of InterGlobal Products and, upon information and belief, is a managing agent of InterGlobal Products.

5

InterGlobal Products is a Florida fictitious name which was registered in Florida under Registration Number G05089700111 from March 30, 2005 to October 24, 2016, and then under Registration Number G16000115620 as of October 25, 2016. Until June 9, 2015, InterGlobal Products' mailing address was Jack West's residence: 34701 Tranquiview Lane, Dade City, FL 33523. From June 9, 2015 to the present, InterGlobal Products' mailing address and principal address has been 37809 Howard Avenue, Dade City, FL 33525. InterGlobal holds itself out to the public as an international procurement specialist of agricultural commodities, and names Jack West as its President and Justin West as its International Sales Manager.

6

Ownership of the fictitious name InterGlobal Products has been transferred between 2Skebengas and Jack West over the years. From March 30, 2005 to August 29, 2010, the name was solely owned by 2Skebengas. On August 30, 2010, Jack West (presumably in his capacity as the President of 2Skebengas) transferred complete ownership of the name from 2Skebengas to himself in his individual capacity. Jack West retained sole ownership from August 30, 2010 until October 26, 2016 when, two weeks after the Complaint was filed, and eight weeks after the Plaintiff's formal demand for

3

payment, he filed a simultaneous cancellation of InterGlobal's existing Registration Number G05089700111 and a re-registration of the name under Registration Number G16000115620, in which he listed 2Skebengas as the sole owner.

7

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship and an amount in controversy greater than $75,000.

8

This Court has personal jurisdiction over the Defendants because they are Florida citizens and residents that regularly conduct business in Florida. Additionally, the claims in this lawsuit arise out of acts performed by the Defendants using the fictitious name InterGlobal Products in relation to a contract created in Florida. Venue is proper because the Defendants are located in Pasco County, which is within the Middle District of Florida, Tampa Division.

FACTUAL BACKGROUND

9

On or about May 21, 2015, Tides and InterGlobal entered into a valid and binding contract (the "Contract"). The Contract provided that InterGlobal would sell kosher, food-grade "organic black chia" of Bolivian origin to Tides for a total cost of $264,554.40. The parties agreed that the seed would be shipped "FOB Delivered," *i.e.*, that InterGlobal would assume all risk of damage or loss until the seeds were received by Tides.

10

The parties agreed to divide the order into five (5) separate shipments. InterGlobal would store each arriving shipment at the "Hillside Warehouse" in Edison, New Jersey until Tides arranged to pick it up.

11

The second shipment of the Contract called for Tides to pick up 1,000 bags of organic black chia at the Hillside Warehouse.

12

At InterGlobal's request, Tides pre-paid the $52,910.88 contract amount for the second shipment.

13

On August 8, 2016, a Tides trucking contractor picked up the chia seed at the Hillside warehouse, which InterGlobal had pre-packaged onto twenty (20) pallets. Each of the pallets was wrapped with cardboard and shrink-wrapped.

14

Unbeknownst to Tides or its contractor, at the time of pickup the chia seed bags were contaminated by rodent feces and rodent urine. In some pallets, rodents had even chewed holes in the chia seed bags. Tides is informed and believes that the contamination of the chia seed occurred while the pallets were in InterGlobal's care at the Hillside Warehouse.

15

Lacking knowledge of the contamination, Tides' trucker transported the contaminated pallets to their destination, a food storage warehouse in St. Peter, Minnesota.

16

When the truck was unsealed at the food storage warehouse in St. Peter on August 10, 2016, workers observed signs of rodents and rodent droppings in and on the pallets. The warehouse workers refused to unload the truck for fear of contaminating the receiving warehouse.

17

Tides immediately communicated to InterGlobal its rejection of the twenty (20) pallets. On August 10 and August 11, Tides requested that InterGlobal provide direction on what to do with the rejected shipment. InterGlobal refused to accept the rejected shipment or to provide further directions.

18

As a result of InterGlobal's failure to provide instructions, on August 12 Tides shipped the contaminated goods to a third-party warehouse so that the cargo load could be inspected and the full extent of the contamination revealed.

19

The third-party auditor found that the contamination was pervasive and determined that it arose while the seed was in InterGlobal's care. The auditors found rodent feces, rodent urine and rodent chew holes in numerous pallets.

20

Tides communicated these findings to InterGlobal on August 16, renewed its rejection of the seed, and again requested direction. InterGlobal did not respond.

21

On August 17, the auditor discovered an insect infestation in the pallets, rendering the shipment an active health and safety hazard. Tides immediately communicated these findings to InterGlobal and requested direction. InterGlobal did not respond.

22

On August 19, the auditor informed Tides and InterGlobal that due to the rodent contamination and insect infestation the shipment must be removed from the auditor's warehouse by the end of that day. Because Tides was unable to ship or receive infested products, and unable to resell it, Tides requested that the auditor dispose of the seed, copying InterGlobal on the electronic mail communication.

23

InterGlobal's failure to deliver conforming goods and its conduct in responding to the contamination substantially impaired the value of the contract as a whole.

24

Based on InterGlobal's failure to properly store the chia seed at the Hillside Warehouse, InterGlobal's production of contaminated goods, its refusal to remedy an obvious defect in performance, and its failure to communicate with Tides throughout the contamination management process, on August 29, 2016, Tides requested, through counsel, that InterGlobal provide assurance within ten (10) business days that InterGlobal

would perform its future obligations under the Contract. InterGlobal, through counsel, responded on September 7, 2016, but failed to provide any such assurance, thereby repudiating the Contract.

25

InterGlobal agreed in the Contract that "[I]N THE EVENT OF A DISPUTE, TIDES RECOVERY SHALL INCLUDE THE COSTS INCURRED IN PURSUING SAID RECOVERY INCLUDING ATTORNEY FEES." (Capitalization in original.)

26

As a result of InterGlobal's conduct set forth above, the Plaintiff has suffered damages in the amount of $168,977.69, not including interest: $52,910.88 for the pre-paid sale amount of the contaminated chia seeds; $1,550.00 for the cost to transport the seeds; $600.00 to re-ship the seeds to the auditor; $4,068.50 for the auditor to unpack and inspect the seeds; $5,108.50 in costs to repack, transport, and destroy the seeds; $6,613.88 in costs to obtain substitute seed to cover the contaminated second shipment; $88,625.93 in additional costs to obtain equivalent goods as a result of InterGlobal's repudiation and breach; and at least $9,500.00 in contractual attorney's fees. Tides has also suffered other costs due to InterGlobal's wrongful retention of Tides' pre-payment, which damages are still accruing, in an amount to be proven at trial.

COUNT ONE—BREACH OF CONTRACT
(NONCONFORMING GOODS)

27

Tides re-alleges paragraphs 1 to 26, above, as if fully set forth here.

8

28

Tides and InterGlobal entered into a binding and enforceable contract for the sale of food-grade, kosher, organic black chia seeds at the cost of $264,554.40. Tides pre-paid the contract amount for the second shipment, $52,910.88.

29

All conditions precedent to the Plaintiff's enforcement of the Contract have been satisfied or performed.

30

InterGlobal breached the contract by failing to supply conforming goods, namely food-grade, kosher chia seeds. The seeds were contaminated by rodent urine and feces and infested with insects.

31

As a result of InterGlobal's breach, the Plaintiff has suffered damages in the amount of $80,351.76, not including interest. Tides has also suffered other additional costs, which damages are still accruing, in an amount to be proven at trial.

COUNT TWO—BREACH OF CONTRACT
(REPUDIATION)

32

Tides incorporates paragraphs 1 to 31, above, as if fully set forth here.

33

Tides and InterGlobal entered into a binding and enforceable contract for the sale of food-grade, kosher, organic black chia seeds at the cost of $264,554.40.

34

All conditions precedent to the Plaintiff's enforcement of the Contract have been satisfied or performed.

35

InterGlobal breached the Contract by failing to deliver conforming goods and failing to properly secure the Hillside Warehouse, as set forth above. Furthermore, during the pendency of the crisis, InterGlobal ignored Tides' communications and failed to meaningfully participate in managing the contaminated goods. Given such circumstances, Tides was placed in reasonable doubt as to whether Tides could count on InterGlobal to properly store future chia shipments and whether, in the event of a problem in future shipments, Tides could count on InterGlobal to fulfill its obligations under the Contract.

36

Tides, lacking reasonable assurance that InterGlobal would or could perform its remaining obligations under the Contract, justifiably requested assurance from InterGlobal for the same on August 29, 2016.

37

InterGlobal's September 7, 2016 correspondence did not provide any such assurance, nor has InterGlobal provided any such assurance to date.

38

InterGlobal's failure to provide adequate assurance effected a repudiation of the Contract. This repudiation breached InterGlobal's obligations under the Contract.

39

As a result of InterGlobal's repudiation and breach, the Plaintiff has suffered damages in the amount of at least $88,625.93 in costs incurred to obtain a replacement seed vendor.

40

The Plaintiff has also suffered other costs due to InterGlobal's breach and repudiation, which damages are still accruing, in an amount to be proven at trial.

COUNT THREE—BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

41

Tides incorporates paragraphs 1 to 26, above, as if fully set forth here.

42

InterGlobal, a merchant, sold Tides 1,000 bags of organic black chia seeds. Such goods were not merchantable at the time of sale because they were contaminated by rodent droppings.

43

Tides suffered injury from the sale of such goods arising from the rodent contamination, which contamination rendered the chia seeds unusable and worthless.

44

Tides immediately notified InterGlobal of Tides' injury and its rejection of the goods.

## COUNT FOUR—BREACH OF IMPLIED WARRANTY
## OF FITNESS FOR A PARTICULAR PURPOSE

### 45

Tides incorporates paragraphs 1 to 26, above, as if fully set forth here.

### 46

At the time of contracting, InterGlobal had reason to know the particular purpose for which the chia seed was required, namely that the chia seed must be kosher and food-grade.

### 47

Tides relied on InterGlobal's skill or judgment as an international goods procurement broker to select and furnish goods suitable for that purpose.

### 48

InterGlobal knew or had reason to know that Tides was relying on InterGlobal's skill or judgment to select and furnish kosher and food-grade chia seed.

### 49

Tides suffered injury from the sale of such goods arising from the rodent contamination, which contamination rendered the chia seeds unusable and worthless.

### 50

Tides immediately notified InterGlobal of Tides' injury and its rejection of the goods.

## COUNT FIVE—BREACH OF EXPRESS WARRANTY

### 51

Tides incorporates paragraphs 1 to 26, above, as if fully set forth here.

52

InterGlobal expressly affirmed, promised, and described that the organic black chia seeds sold pursuant to the Contract were kosher and food-grade.

53

This warranty became the basis of the bargain for the product. Without this warranty, the product was useless to Tides.

54

InterGlobal breached this warranty by selling Tides chia seeds that were contaminated by rodent feces and rodent urine. Contaminated chia seeds are neither food-grade nor kosher.

55

Tides suffered damages, in particular the complete loss of the shipment, and costs to verify the contamination and dispose of the contaminated goods, that were proximately caused by InterGlobal's breach of the warranty.

COUNT SIX—UNJUST ENRICHMENT

56

Tides incorporates paragraphs 1 to 8 and 11 to 26, above, as if fully set forth here.

57

Tides conferred a benefit on InterGlobal in the amount of at least $52,910.88, which benefit was realized by InterGlobal due to Tides' pre-payment for the sale of organic black chia seeds.

58

Tides also conferred a benefit on InterGlobal in the amount of at least $17,940.88, which benefit was realized by InterGlobal by not paying for the transportation, inspection, and destruction of its contaminated chia seeds, and which costs were borne by Plaintiff as a result of InterGlobal's intransigence.

59

Because the chia seeds were contaminated by rodent feces and urine while in InterGlobal's care, such that they were essentially worthless to Tides, it would be inequitable and unjust for InterGlobal to retain these benefits, as well as others that may be proven at trial, without paying for them.

PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that the court award the following relief:

1. Enter a judgment in favor of the Plaintiff and against the Defendants, jointly and severably, for compensatory damages, including contractual attorney's fees in the sum of at least $168,977.69;

2. Additional general and special damages that may be proven at trial;

3. Interest pursuant on all outstanding accounts from the date of Defendants' breach to the date of judgment;

4. Tax the costs of this action against the Defendants;

5. Award to the Plaintiff its reasonable attorney's fees, costs, and expenses incurred in prosecuting this action;

6.  Grant a trial by jury on all issues so triable; and

7.  Award such other and further relief in favor of the Plaintiff as the court deems

just and appropriate.

Respectfully submitted this 17th day of November, 2016.

/s/ Robert D. Sowell
Robert D. Sowell
Florida Bar No. 113615
BAKER & HOSTETLER, LLP
Suntrust Center
200 South Orange Avenue
Suite 2300
Orlando, FL 32801-3443
Telephone: (407) 649-4032
rsowell@bakerlaw.com

Eric L. Barnum (pro hac vice)
Georgia Bar No. 039305
Kevin D. Bradberry (pro hac vice)
Georgia Bar No. 532880
BAKER & HOSTETLER, LLP
1170 Peachtree Street, NE
Suite 2400
Atlanta, Georgia 30309-7676
Telephone: (404) 256-8783
Facsimile: (404) 459-5734
ebarnum@bakerlaw.com
kbradberry@bakerlaw.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

THE TIDES COMMODITY
TRADING GROUP, INC.

      Plaintiff,

                                Civil Action:  8:16-cv-02914-EAK-MAP

v.

JACK R. WEST, an individual doing business as
INTERGLOBAL  PRODUCTS;
2SKEBENGAS COMPANY,
a corporation doing business as
INTERGLOBAL PRODUCTS; and
JUSTIN WEST, an individual doing business as
INTERGLOBAL  PRODUCTS

      Defendants.

## DEFENDANT, JUSTIN WEST'S, ANSWER, DEFENSES AND DEMAND
## FOR JURY TRIAL

      Justin West, individually, erroneously referred to as doing business as InterGlobal Products, answers the First Amended Complaint filed by Plaintiff, The Tides Commodity Trading Group, Inc. ("Tides") and states as follows:

## PARTIES, JURISDICTION & VENUE

1.     Admit.

2.     Admit the allegations concerning Jack R. West's citizenship and residence.  Admit he is listed as the President of InterGlobal Products on its



website, InterGlobal Products.com, and is the President and sole officer/director of 2Skebengas Company. Also admit that from August 30, 2010 to October 24, 2016, Jack West was registered with the Florida Secretary of State as the owner of InterGlobal Products, but deny that he was the actual, *de facto* owner of the fictitious entity known as InterGlobal Products; rather, 2Skebengas Company was the actual owner of InterGlobal Products at all times relevant to allegations contained in the First Amended Complaint.

3.    Admit.

4.    Admit the allegations concerning Justin West's citizenship and residence. Admit he is listed as the International Sales Manager of InterGlobal Products on its website, InterGlobal Products.com. Deny the remaining allegations.

5.    Admit.

6.    Admit that from March 30, 2005 to August 25, 2010 InterGlobal Products was solely owned by 2Skebengas Company. Further admit that on October 26, 2016 Jack West cancelled Registration Number G05089700111 and filed Registration Number G16000115620 in which he listed 2Skebengas Company as the sole owner of InterGlobal Products. Admit that 2Skebengas Company has always been the actual owner of InterGlobal Products since March 30, 2005 to date. Deny the remaining allegations.

7.    Deny that the matter in controversy exceeds $75,000, exclusive of interest and costs, admit that diversity of citizenship exists, and admit this Court has subject matter jurisdiction.

8.    Admit the venue allegations and admit that Justin West is a Florida resident. Deny the remaining allegations.

## FACTUAL BACKGROUND

9.    Admit that Tides and InterGlobal entered into a contract which is attached hereto as Exhibit "A" and incorporated by reference as if fully set forth herein. The terms of the contract speak for themselves.

10.    Admit.

11.    Admit.

12.    Admit that Tides paid the invoice price of $52,910.88 for the second shipment.

13.    Admit that on August 8, 2016, a Tides trucking contractor picked up the chia seed at the Hillside warehouse and that the chia seed pallets were wrapped with cardboard and shrink-wrapped onto twenty (20) pallets. Deny that InterGlobal pre-packaged the chia seeds. InterGlobal further states that the Tides trucking contractor signed a bill of lading accepting the chia seeds and acknowledged receiving the seeds in good order. A copy of the bill of lading is attached hereto as Exhibit "B" and incorporated by reference as if fully set forth herein.

14.    Deny that the chia seed bags were contaminated at the time of pick-up. Deny all other allegations in this paragraph.

15.    Deny that the chia seed bags were contaminated at the time of pick-up. Deny all other allegations in this paragraph.

16.    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations: but, Defendant states that, to the extent there was any contamination, any such contamination occurred after the chia seeds were picked up by the truck driver while they were in his exclusive possession and control.

17.    Deny Tides immediately communicated to InterGlobal its rejection of the twenty (20) pallets. Admit that there was communication between Tides and InterGlobal on August 10 and August 11, admit Tides purported to reject the shipment and requested that InterGlobal provide direction on what to do with the rejected shipment. Admit that InterGlobal rejected Tides' claim the seeds were

contaminated, asserting that the seeds had been inspected at the Hillside warehouse before loading and found no evidence of contamination and that Tides' driver inspected the pallets of seed at pick-up and signed a bill of lading accepting the seeds in good condition. Deny any remaining allegations.

18.    Admit Tides shipped the chia seed to a warehouse maintained by an entity named Freight Dynamics. Deny the remaining allegations.

19.    Admit that Freight Dynamics claimed it found contamination, but deny its allegations are true.

20.    Admit that Tides communicated these findings to InterGlobal. Deny the remaining allegations.

21.    Deny.

22.    Admit that on August 19, Freight Dynamics informed Tides and InterGlobal that due to the alleged rodent contamination and insect infestation the shipment must be removed from their warehouse by the end of that day. Admit that Tides claimed that because Tides was unable to ship or receive infested products, and unable to resell it, Tides requested that Freight Dynamics dispose of the seed, copying InterGlobal on the electronic mail communication. Deny any inference that Freight Dynamics was actually an independent auditor.

23.    Deny.

24.    Admit that on August 29, 2016 Tides counsel communicated with InterGlobal's counsel and that on September 7, 2016, InterGlobal's counsel replied. Deny the remaining allegations.

25.    Admit the contract referenced in Exhibit "A" contains an attorney fee provision legally effective to the prevailing party in the litigation.

26.    Deny.

## COUNT ONE - BREACH OF CONTRACT
### (NONCONFORMING  GOODS)

27.   Defendant, Justin West, individually, re-alleges answers to paragraphs 1 to 26, above, as if fully set forth here.

28.   Admit Tides and InterGlobal entered into a contract referenced by Exhibit "A" attached hereto and admit Tides paid the invoice amount for the second shipment, $52,910.88.  Deny any inference that Justin West, individually, had any interest in InterGlobal Products other than as an employee.

29.   Deny.  Tides failed to comply with the following conditions precedent to the enforcement of the Contract:

      a.     Failure to provide adequate notice of alleged breach.
      b.     Failure to mitigate damages.
      c.     Failure to cover.
      d.     Failure to preserve the chia seed as evidence.
      e.     Failure to make reasonable efforts to sell the seeds for InterGlobal's account
      f.     Failure to have an independent third party perform a binding audit regarding the alleged nonconforming goods.

30.   Deny.

31.   Deny.

## COUNT TWO - BREACH  OF  CONTRACT (REPUDIATION)

32.   Defendant, Justin West, individually, incorporates answers to paragraphs 1 to 31, above, as if fully set forth here.

33.   Admit Tides and InterGlobal entered into a contract referenced by Exhibit "A" attached hereto.

34.   Deny.  Tides failed to comply with the following conditions precedent to the enforcement of the Contract:

a.  Tides failed to comply with the time limits for delivery of the final three shipments required under the contract.

b.  Failure to provide adequate notice of alleged breach.

c.  Failure to mitigate damages.

d.  Failure to cover.

e.  Failure to preserve the chia seed as evidence.

f.  Failure to have an independent third party perform a binding audit regarding the alleged nonconforming goods.

.g.  Tides failed to make payments on the first two shipments in a timely manner.

35.  Deny.

36.  Admit that on August 29, 2016 Tides counsel communicated with InterGlobal's counsel and that on September 7, 2016, InterGlobal's counsel replied.  Deny the remaining allegations.

37.  Deny.

38.  Deny.

39.  Deny.

40.  Deny.

## COUNT THREE - BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

41.  Defendant, Justin West, individually, incorporates answers to paragraphs 1 to 26, above, as if fully set forth here.

42.  Admit InterGlobal sold Tides 1,000 bags of organic black chia seeds. Deny the remaining allegations.

43.  Deny.

44.  Deny.

## COUNT FOUR - BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

45.    Defendant, Justin West, individually, incorporates answers to paragraphs 1 to 26, above, as if fully set forth here.

46.    Admit.

47.    Deny.

48.    Deny.

49.    Deny.

50.    Deny.

## COUNT FIVE - BREACH OF EXPRESS WARRANTY

51.    Defendant, Justin West, individually, incorporates answers to paragraphs 1 to 22, above, as if fully set forth here.

52.    Deny.

53.    Deny.

54.    Deny.

55.    Deny.

## COUNT SIX - UNJUST ENRICHMENT

56.    Defendant, Justin West, individually, incorporates paragraphs 1 to 8 and 11-26, above, as if fully set forth here.

57.    Deny Tides payment of the invoice price was a pre-payment. Admit the remaining allegations.

58.    Deny.

59.    Deny.

## AFFIRMATIVE DEFENSES

Defendant, Justin West, individually, alleges the following affirmative defenses with respect to the purported claims for relief alleged in the First Amended Complaint.

### First Affirmative Defense

As a separate and affirmative defense to the First Amended Complaint, and to each purported cause of action thereof, Justin West asserts the complaint fails to state any claims upon which relief can be granted. Justin West does not own or have any ownership interest in the fictitious entity doing business as InterGlobal Products. Nor does Justin West have any ownership interest in 2Skebengas Company. Justin West is not a shareholder in 2Skebengas Company, is not a director of the company nor is he an officer of the company. Justin West did not enter into the contract with Tides referenced as Exhibit A." Justin West is an employee of 2Skebengas Company. Accordingly, Justin West cannot legally be liable for any of the causes of action asserted in the First Amended Complaint stemming from the contract between Tides and InterGlobal Products attached hereto as Exhibit "A."

### Second Affirmative Defense

Unclean Hands. The actions of the Plaintiff should bar recovery in this action. The Plaintiff's wrongful conduct precludes it from seeking relief and the claim should be dismissed.

### Third Affirmative Defense

Fraud. The actions of the Plaintiff should bar recovery in this action. The Plaintiff's wrongful conduct precludes it from seeking relief and the claim should be dismissed. If, and to the exten that, the subject chia seeds were contaminated, Plaintiff and/or its agents and employees caused any such contamination. Further, Plaintiff wrongfully attempted to avoid responsibility for its actions by casting blame for any contamination onto the Defendants. The Plaintiff and its agents and/or employees manipulated the findings of the so-called audit investigation to make it appear as if Defendants were at fault for any

contamination. The Plaintiff misrepresented its contractual agreements with alleged third party buyers of the chia seed and behaved fraudulently with the disposition of the supposedly contaminated chia seeds.

### Fourth Affirmative Defense

Plaintiff breached the contract referenced in Exhibit "A" by failing to take delivery of the chia seeds within the contractual deadline of August through December 2015.

### Fifth Affirmative Defense

Plaintiff's claims are barred for failure to join necessary or indispensable parties, namely the truck driver who maintained the chia seeds in his exclusive possession after accepting delivery of the seeds and acknowledging that they were in good condition.

### Sixth Affirmative Defense

Per Federal Rule of Civil procedure 19(a), the Complaint fails to join the truck driver who picked up the chia seed from the Hillside warehouse. The truck driver signed a bill of lading when he picked up the seed which indicated the seeds were in good condition. Accordingly, the alleged defect in the condition of the seeds, if any actually existed, occurred while they were in the trucker's control.

### Seventh Affirmative Defense

Plaintiff's damages, if any, were the result of conditions or occurrences subsequent to the pick-up of the chia seeds at the Hillside warehouse which were unrelated to InterGlobal's conduct.

### Eighth Affirmative Defense

Plaintiff failed to act in a commercially reasonable manner and violated the requirements of Uniform Commercial Code § 2-604 regarding its obligations concerning the salvage of rightfully rejected goods. Tides claimed it destroyed all of the chia seed rather than storing the seed for InterGlobal's account or reshipping the seeds to it or reselling them for InterGlobal's account

### Ninth Affirmative Defense

Plaintiff failed to give proper, reasonable notice of the purported breach of the contract and breach of any warranties regarding the seeds.

### Tenth Affirmative Defense

Plaintiff failed to mitigate its damages by selling any undamaged chia seed or by taking reasonable steps to reduce the costs it allegedly incurred in connection with the transaction.

### Eleventh Affirmative Defense

Plaintiff failed to "cover" its damages by making a good faith purchase of or contract to purchase chia seeds in substitution for those due from InterGlobal.

### Twelfth Affirmative Defense

Plaintiff failure to preserve any of the supposedly contaminated chia seed constitutes spoliation of evidence.

**WHEREFORE**, Defendant, Justin West, individually, prays for judgment as follows:

1. That Plaintiff take nothing by reason of its First Amended Complaint, that the First Amended Complaint be dismissed in its entirety with prejudice, and that judgment be entered for Defendant, Justin West, individually.

2. That Defendant, Justin West, individually, be awarded its reasonable costs and attorneys' fees;

3. Defendant Justin West, individually, demands a trial by jury on all issues so triable; and,.

4. That Defendant, Justin West, individually, be awarded such other and further relief as the Court deems just and proper.

## CERTIFICATE OF SERVICE

**I CERTIFY** that a copy of the foregoing has been furnished to Robert D. Sowell, BAKER HOSTETLER, LLP by electronic mail delivery at rsowell@bakerlaw.com on this 19th day of December, 2016.

**MANDER LAW GROUP**
14217 Third Street
Dade City, Florida  33523
Tel:    (352) 567-0411
Fax:    (352) 567-8457

*/s/ A.R. Mander, III*
A. R. Mander, III, Esq.
Florida Bar No. 0230405
Attorney for Defendant
Primary Email:
arm4law@manderlawgroup.com
Secondary Email:
mwhite@manderlawgroup.com

Misty Morgan Vianna, Esq.
Attorney for Defendant
Florida Bar No. 0095219
Primary Email:
mvianna@manderlawgroup.com
Secondary Email:
mwhite@manderlawgroup.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

THE TIDES COMMODITY
TRADING GROUP, INC.

      Plaintiff,

                              Civil Action:  8:16-cv-02914-EAK-MAP

v.

JACK R. WEST, an individual doing business as
INTERGLOBAL  PRODUCTS;
2SKEBENGAS COMPANY,
a corporation doing business as
INTERGLOBAL PRODUCTS; and
JUSTIN WEST, an individual doing business as
INTERGLOBAL  PRODUCTS

      Defendants.

## DEFENDANTS, 2SKEBENGAS COMPANY'S and JACK R. WEST'S, ANSWERS, DEFENSES AND DEMANDS FOR JURY TRIAL

      2Skebengas Company d/b/a InterGlobal Products ("InterGlobal") and Jack R. West, individually, erroneously referenced as doing business as InterGlobal Products, answer the First Amended Complaint filed by Plaintiff, The Tides Commodity Trading Group, Inc. ("Tides") and state as follows:

### PARTIES, JURISDICTION & VENUE

1.    Admit.

2.    Admit the allegations concerning Jack R. West's citizenship and residence.  Admit he is listed as the President of InterGlobal Products on its

website, InterGlobal Products.com, and is the President and sole officer/director of 2Skebengas Company. Also admit that from August 30, 2010 to October 24, 2016, Jack West was registered with the Florida Secretary of State as the owner of InterGlobal Products, but deny that he was the actual, *de facto* owner of the fictitious entity doing business as InterGlobal Products; rather, 2Skebengas Company was the actual owner of InterGlobal Products at all times relevant to allegations contained in the First Amended Complaint.

3.     Admit.

4.     Admit the allegations concerning Justin West's citizenship and residence. Admit he is listed as the International Sales Manager of InterGlobal Products on its website, InterGlobal Products.com. Deny the remaining allegations.

5.     Admit.

6.     Admit that from March 30, 2005 to August 25, 2010 InterGlobal Products was solely owned by 2Skebengas Company. Further admit that on October 26, 2016 Jack West cancelled Registration Number G05089700111 and filed Registration Number G16000115620 in which he listed 2Skebengas Company as the sole owner of InterGlobal Products. Admit that 2Skebengas Company has always been the actual owner of InterGlobal Products since March 30, 2005 to date. Deny the remaining allegations.

7.     Deny that the matter in controversy exceeds $75,000, exclusive of interest and costs, admit that diversity of citizenship exists, and admit this Court has subject matter jurisdiction.

8.     Admit the venue allegations and admit that Justin West is a Florida resident. Deny the remaining allegations.

## FACTUAL BACKGROUND

9.     Admit that Tides and InterGlobal entered into a contract which is attached hereto as Exhibit "A" and incorporated by reference as if fully set forth herein. The terms of the contract speak for themselves.

10.     Admit.

11.     Admit.

12.     Admit that Tides paid the invoice price of $52,910.88  for the second shipment.

13.     Admit that on August 8, 2016. a Tides trucking contractor picked up the chia seed at the Hillside warehouse and that the chia seed pallets were wrapped with cardboard and shrink-wrapped onto twenty (20) pallets.  Deny that InterGlobal pre-packaged the chia seeds.  InterGlobal further states that the Tides trucking contractor signed a bill of lading accepting the chia seeds and acknowledged receiving the seeds in good order.  A copy of the bill of lading is attached hereto as Exhibit "B" and incorporated by reference as if fully set forth herein.

14.     Deny that the chia seed bags were contaminated at the time of pick-up. Deny all other allegations in this paragraph..

15.     Deny that the chia seed bags were contaminated at the time of pick-up. Deny all other allegations in this paragraph.

16.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations: but, Defendants state that, to the extent there was any contamination, any such contamination occurred after the chia seeds were picked up by the truck driver while they were in his exclusive possession and control.

17.     Deny Tides immediately communicated to InterGlobal its rejection of the twenty (20) pallets. Admit that there was communication between Tides and InterGlobal on August 10 and August 11, admit Tides purported to reject the shipment and  requested that InterGlobal provide direction on what to do with the rejected shipment. Admit that InterGlobal rejected Tides' claim the seeds were

contaminated, asserting that the seeds had been inspected at the Hillside warehouse before loading and found no evidence of contamination and that Tides' driver inspected the pallets of seed at pick-up and signed a bill of lading accepting the seeds in good condition. Deny any remaining allegations.

18.    Admit Tides shipped the chia seed to a warehouse maintained by an entity named Freight Dynamics. Deny the remaining allegations.

19.    Admit that Freight Dynamics claimed it found contamination, but deny its allegations are true.

20.    Admit that Tides communicated these findings to InterGlobal. Deny the remaining allegations.

21.    Deny.

22.    Admit that on August 19, Freight Dynamics informed Tides and InterGlobal that due to the alleged rodent contamination and insect infestation the shipment must be removed from their warehouse by the end of that day. Admit that Tides claimed that because Tides was unable to ship or receive infested products, and unable to resell it, Tides requested that Freight Dynamics dispose of the seed, copying InterGlobal on the electronic mail communication. Deny any inference that Freight Dynamics was actually an independent auditor.

23.    Deny.

24.    Admit that on August 29, 2016 Tides counsel communicated with InterGlobal's counsel and that on September 7, 2016, InterGlobal's counsel replied. Deny the remaining allegations.

25.    Admit the contract referenced in Exhibit "A" contains an attorney fee provision legally effective to the prevailing party in the litigation.

26.    Deny.

## COUNT ONE - BREACH OF CONTRACT
### (NONCONFORMING GOODS)

27.    Defendants re-allege answers to paragraphs I to 26, above, as if fully set forth here.

28.    Admit Tides and InterGlobal entered into a contract referenced by Exhibit "A" attached hereto and admit Tides paid the invoice amount for the second shipment, $52,910.88.  Deny any inference that Justin West, individually, had any interest in InterGlobal Products other than as an employee.

29.    Deny.  Tides failed to comply with the following conditions precedent to the enforcement of the Contract:

      a.    Failure to provide adequate notice of alleged breach.
      b.    Failure to mitigate damages.
      c.    Failure to cover.
      d.    Failure to preserve the chia seed as evidence.
      e.    Failure to make reasonable efforts to sell the seeds for InterGlobal's account
      f.    Failure to have an independent third party perform a binding audit regarding the alleged nonconforming goods.

30.    Deny.

31.    Deny.

## COUNT TWO - BREACH OF CONTRACT (REPUDIATION)

32.    Defendants incorporate answers to paragraphs 1 to 31, above, as if fully set forth here.

33.    Admit Tides and InterGlobal entered into a contract referenced by Exhibit "A" attached hereto.

34.    Deny.  Tides failed to comply with the following conditions precedent to the enforcement of the Contract:

a.   Tides failed to comply with the time limits for delivery of the final three
     shipments required under the contract.
b.   Failure to provide adequate notice of alleged breach.
c.   Failure to mitigate damages.
d.   Failure to cover.
e.   Failure to preserve the chia seed as evidence.
f.   Failure to have an independent third party perform a binding audit
     regarding the alleged nonconforming goods.
g.   Tides failed to make payments on the first two shipments in a timely
     manner.

35.    Deny.

36.    Admit that on August 29, 2016 Tides counsel communicated with
InterGlobal's counsel and that on September 7, 2016, InterGlobal's counsel
replied.  Deny the remaining allegations.

37.    Deny.

38.    Deny.

39.    Deny.

40.    Deny.

## COUNT THREE - BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

41.    Defendants incorporate answers to paragraphs 1 to 26, above, as if fully
set forth here.

42.    Admit InterGlobal sold Tides 1,000 bags of organic black chia seeds.
Deny the remaining allegations.

43.    Deny.

44.    Deny.

## COUNT FOUR - BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

45.     Defendants incorporate answers to paragraphs 1 to 26, above, as if fully set forth here.

46.     Admit.

47.     Deny.

48.     Deny.

49.     Deny.

50.     Deny.

## COUNT FIVE - BREACH OF EXPRESS WARRANTY

51.     Defendants incorporate answers to paragraphs 1 to 22, above, as if fully set forth here.

52.     Deny.

53.     Deny.

54.     Deny.

55.     Deny.

## COUNT SIX - UNJUST ENRICHMENT

56.     Defendants incorporate paragraphs 1 to 8 and 11-26, above, as if fully set forth here.

57.     Deny Tides payment of the invoice price was a pre-payment.  Admit the remaining allegations.

58.     Deny.

7

59.    Deny.

## AFFIRMATIVE DEFENSES

2Skebengas Company d/b/a InterGlobal Products ("InterGlobal") and Jack R. West, individually, erroneously referenced as doing business as InterGlobal Products, allege the following affirmative defenses with respect to the purported claims for relief alleged in the First Amended Complaint.

### First Affirmative Defense

As a separate and affirmative defense to the First Amended Complaint, and to each purported cause of action thereof, Jack R. West asserts the complaint fails to state any claims upon which relief can be granted. Jack R. West does not own or have any individual ownership interest in the fictitious entity doing business as InterGlobal Products. 2Skebengas Company is the actual owner of the fictitious entity, InterGlobal Products. 2Skebengas Company has actually performed all the legal, contractual and financial functions for InterGlobal Products since its inception to date. The lease for the premises in which InterGlobal Products does business is in the name of 2Skebengas Company. All bank accounts used by InterGlobal Products for any transactions are in the name of 2Skebengas Company. Payroll, taxes and all other financial obligations are paid by 2Skebengas Company. Tax returns for the fictitious entity are filed in the name of 2Skebengas Company. The actual transactions associated with Exhibit "A" herein, including the arrangement for the purchase and shipment of the chia seeds, were undertaken in the name of 2Skebengas Company. Jack R. West is an employee of 2Skebengas Company. He does not receive any compensation directly from the fictitious entity. Accordingly, Jack R. West cannot legally be liable for any of the causes of action asserted in the First Amended Complaint stemming from the contract between Tides and InterGlobal Products attached hereto as Exhibit "A" because InterGlobal product was actually owned by 2Skebengas Company.

### Second Affirmative Defense

Unclean Hands. The actions of the Plaintiff should bar recovery in this action. The Plaintiff's wrongful conduct precludes it from seeking relief and the claim should be dismissed.

### Third Affirmative Defense

Fraud.  The actions of the Plaintiff should bar recovery in this action. The Plaintiff's wrongful conduct precludes it from seeking relief and the claim should be dismissed.  If, and to the extent that, the subject chia seeds were contaminated, Plaintiff and/or its agents and employees caused any such contamination.  Further, Plaintiff wrongfully attempted to avoid responsibility for its actions by casting blame for any contamination onto the Defendants.  The Plaintiff and its agents and/or employees manipulated the findings of the so-called audit investigation to make it appear as if Defendants were at fault for any contamination.  The Plaintiff misrepresented its contractual agreements with alleged third party buyers of the chia seed and behaved fraudulently with the disposition of the supposedly contaminated chia seeds.

### Fourth Affirmative Defense

Plaintiff breached the contract referenced in Exhibit "A" by failing to take delivery of the chia seeds within the contractual deadline of August through December 2015.

### Fifth Affirmative Defense

Plaintiff's claims are barred for failure to join necessary or indispensable parties, namely the truck driver who maintained the chia seeds in his exclusive possession after accepting delivery of the seeds and acknowledging that they were in good condition.

### Sixth Affirmative Defense

Per Federal Rule of Civil Procedure 19(a), the Complaint fails to join the truck driver who picked up the chia seed from the Hillside warehouse.  The truck driver signed a bill of lading when he picked up the seed which indicated the seeds were in good condition.  Accordingly, the alleged defect in the condition of the seeds, if any actually existed, occurred while they were in the trucker's control.

9

### Seventh Affirmative Defense

Plaintiff's damages, if any, were the result of conditions or occurrences subsequent to the pick-up of the chia seeds at the Hillside warehouse which were unrelated to InterGlobal's conduct.

### Eighth Affirmative Defense

Plaintiff failed to act in a commercially reasonable manner and violated the requirements of Uniform Commercial Code § 2-604 regarding its obligations concerning the salvage of rightfully rejected goods. Tides claimed it destroyed all of the chia seed rather than storing them for InterGlobal's account or reshipping the seeds to it or reselling them for InterGlobal's account

### Ninth Affirmative Defense

Plaintiff failed to give proper, reasonable notice of the purported breach of the contract and breach of any warranties regarding the seeds.

### Tenth Affirmative Defense

Plaintiff failed to mitigate its damages by selling any undamaged chia seed or by taking reasonable steps to reduce the costs it allegedly incurred in connection with the transaction.

### Eleventh Affirmative Defense

Plaintiff failed to "cover" its damages by making a good faith purchase of or contract to purchase chia seeds in substitution for those due from InterGlobal.

### Twelfth Affirmative Defense

Plaintiff's failure to preserve any of the supposedly contaminated chia seed constitutes spoliation of evidence.

**WHEREFORE,** Defendants, 2Skebengas Company d/b/a InterGlobal Products ("InterGlobal") and Jack R. West, individually, pray for judgment as follows:

1. That Plaintiff take nothing by reason of its First Amended Complaint, that the First Amended Complaint be dismissed in its entirety with prejudice, and that judgment be entered for Defendants;

2. That Defendants be awarded their reasonable costs and attorneys' fees;

3. Defendants demand a trial by jury on all issues so triable; and,

4. That Defendants be awarded such other and further relief as the Court deems just and proper.

**I CERTIFY** that a copy of the foregoing has been furnished to Robert D. Sowell, BAKER HOSTETLER, LLP by electronic mail delivery at rsowell@bakerlaw.com on this 19th day of December, 2016.

**MANDER LAW GROUP**
14217 Third Street
Dade City, Florida  33523
Tel:   (352) 567-0411
Fax:   (352) 567-8457

*/s/ A.R. Mander, III*
A. R. Mander, III, Esq.
Florida Bar No. 0230405
Primary Email:
arm4law@manderlawgroup.com
Secondary Email:
mwhite@manderlawgroup.com

Misty Morgan Vianna, Esq.
Florida Bar No. 0095219
Primary Email:
mvianna@manderlawgroup.com
Secondary Email:
mwhite@manderlawgroup.com
Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

THE TIDES COMMODITY
TRADING GROUP, INC.

      Plaintiff,

                              Civil Action:  8:16-cv-02914-EAK-MAP

v.

JACK R. WEST, an individual doing business as
INTERGLOBAL PRODUCTS;
2SKEBENGAS COMPANY,
a corporation doing business as
INTERGLOBAL PRODUCTS; and
JUSTIN WEST, an individual doing business as
INTERGLOBAL PRODUCTS

      Defendants.

## DEFENDANTS, 2SKEBENGAS COMPANY'S and JACK R. WEST'S, ANSWERS, DEFENSES AND DEMANDS FOR JURY TRIAL

    2Skebengas Company d/b/a InterGlobal Products ("InterGlobal") and Jack R. West, individually, erroneously referenced as doing business as InterGlobal Products, answer the First Amended Complaint filed by Plaintiff, The Tides Commodity Trading Group, Inc. ("Tides") and state as follows:

## PARTIES, JURISDICTION & VENUE

1.    Admit.

2.    Admit the allegations concerning Jack R. West's citizenship and residence.  Admit he is listed as the President of InterGlobal Products on its

website, InterGlobal Products.com, and is the President and sole officer/director of 2Skebengas Company. Also admit that from August 30, 2010 to October 24, 2016, Jack West was registered with the Florida Secretary of State as the owner of InterGlobal Products, but deny that he was the actual, *de facto* owner of the fictitious entity doing business as InterGlobal Products; rather, 2Skebengas Company was the actual owner of InterGlobal Products at all times relevant to allegations contained in the First Amended Complaint.

3.     Admit.

4.     Admit the allegations concerning Justin West's citizenship and residence. Admit he is listed as the International Sales Manager of InterGlobal Products on its website, InterGlobal Products.com. Deny the remaining allegations.

5.     Admit.

6.     Admit that from March 30, 2005 to August 25, 2010 InterGlobal Products was solely owned by 2Skebengas Company. Further admit that on October 26, 2016 Jack West cancelled Registration Number G05089700111 and filed Registration Number G16000115620 in which he listed 2Skebengas Company as the sole owner of InterGlobal Products. Admit that 2Skebengas Company has always been the actual owner of InterGlobal Products since March 30, 2005 to date. Deny the remaining allegations.

7.     Deny that the matter in controversy exceeds $75,000, exclusive of interest and costs, admit that diversity of citizenship exists, and admit this Court has subject matter jurisdiction.

8.     Admit the venue allegations and admit that Justin West is a Florida resident. Deny the remaining allegations.

## FACTUAL BACKGROUND

9.      Admit that Tides and InterGlobal entered into a contract which is attached hereto as Exhibit "A" and incorporated by reference as if fully set forth herein. The terms of the contract speak for themselves.

10.    Admit.

11.    Admit.

12.    Admit that Tides paid the invoice price of $52,910.88 for the second shipment.

13.    Admit that on August 8, 2016. a Tides trucking contractor picked up the chia seed at the Hillside warehouse and that the chia seed pallets were wrapped with cardboard and shrink-wrapped onto twenty (20) pallets. Deny that InterGlobal pre-packaged the chia seeds. InterGlobal further states that the Tides trucking contractor signed a bill of lading accepting the chia seeds and acknowledged receiving the seeds in good order. A copy of the bill of lading is attached hereto as Exhibit "B" and incorporated by reference as if fully set forth herein.

14.    Deny that the chia seed bags were contaminated at the time of pick-up. Deny all other allegations in this paragraph..

15.    Deny that the chia seed bags were contaminated at the time of pick-up. Deny all other allegations in this paragraph.

16.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations: but, Defendants state that, to the extent there was any contamination, any such contamination occurred after the chia seeds were picked up by the truck driver while they were in his exclusive possession and control.

17.    Deny Tides immediately communicated to InterGlobal its rejection of the twenty (20) pallets. Admit that there was communication between Tides and InterGlobal on August 10 and August 11, admit Tides purported to reject the shipment and requested that InterGlobal provide direction on what to do with the rejected shipment. Admit that InterGlobal rejected Tides' claim the seeds were

3

contaminated, asserting that the seeds had been inspected at the Hillside warehouse before loading and found no evidence of contamination and that Tides' driver inspected the pallets of seed at pick-up and signed a bill of lading accepting the seeds in good condition. Deny any remaining allegations.

18.    Admit Tides shipped the chia seed to a warehouse maintained by an entity named Freight Dynamics. Deny the remaining allegations.

19.    Admit that Freight Dynamics claimed it found contamination, but deny its allegations are true.

20.    Admit that Tides communicated these findings to InterGlobal. Deny the remaining allegations.

21.    Deny.

22.    Admit that on August 19, Freight Dynamics informed Tides and InterGlobal that due to the alleged rodent contamination and insect infestation the shipment must be removed from their warehouse by the end of that day. Admit that Tides claimed that because Tides was unable to ship or receive infested products, and unable to resell it, Tides requested that Freight Dynamics dispose of the seed, copying InterGlobal on the electronic mail communication. Deny any inference that Freight Dynamics was actually an independent auditor.

23.    Deny.

24.    Admit that on August 29, 2016 Tides counsel communicated with InterGlobal's counsel and that on September 7, 2016, InterGlobal's counsel replied. Deny the remaining allegations.

25.    Admit the contract referenced in Exhibit "A" contains an attorney fee provision legally effective to the prevailing party in the litigation.

26.    Deny.

4

## COUNT ONE - BREACH OF CONTRACT
## (NONCONFORMING  GOODS)

27.    Defendants re-allege answers to paragraphs I to 26, above, as if fully set forth here.

28.    Admit Tides and InterGlobal entered into a contract referenced by Exhibit "A" attached hereto and admit Tides paid the invoice amount for the second shipment, $52,910.88.  Deny any inference that Justin West, individually, had any interest in InterGlobal Products other than as an employee.

29.    Deny.  Tides failed to comply with the following conditions precedent to the enforcement of the Contract:

      a.    Failure to provide adequate notice of alleged breach.
      b.    Failure to mitigate damages.
      c.    Failure to cover.
      d.    Failure to preserve the chia seed as evidence.
      e.    Failure to make reasonable efforts to sell the seeds for InterGlobal's account
      f.    Failure to have an independent third party perform a binding audit regarding the alleged nonconforming goods.

30.    Deny.

31.    Deny.

## COUNT  TWO - BREACH  OF  CONTRACT (REPUDIATION)

32.    Defendants incorporate answers to paragraphs 1 to 31, above, as if fully set forth here.

33.    Admit Tides and InterGlobal entered into a contract referenced by Exhibit "A" attached hereto.

34.    Deny.  Tides failed to comply with the following conditions precedent to the enforcement of the Contract:

5

a.  Tides failed to comply with the time limits for delivery of the final three shipments required under the contract.
b.  Failure to provide adequate notice of alleged breach.
c.  Failure to mitigate damages.
d.  Failure to cover.
e.  Failure to preserve the chia seed as evidence.
f.  Failure to have an independent third party perform a binding audit regarding the alleged nonconforming goods.
g.  Tides failed to make payments on the first two shipments in a timely manner.

35.  Deny.

36.  Admit that on August 29, 2016 Tides counsel communicated with InterGlobal's counsel and that on September 7, 2016, InterGlobal's counsel replied.  Deny the remaining allegations.

37.  Deny.

38.  Deny.

39.  Deny.

40.  Deny.

## COUNT THREE - BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

41.  Defendants incorporate answers to paragraphs 1 to 26, above, as if fully set forth here.

42.  Admit InterGlobal sold Tides 1,000 bags of organic black chia seeds. Deny the remaining allegations.

43.  Deny.

44.  Deny.

6

## COUNT FOUR – BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

45.    Defendants incorporate answers to paragraphs 1 to 26, above, as if fully set forth here.

46.    Admit.

47.    Deny.

48.    Deny.

49.    Deny.

50.    Deny.

## COUNT FIVE – BREACH OF EXPRESS WARRANTY

51.    Defendants incorporate answers to paragraphs 1 to 22, above, as if fully set forth here.

52.    Deny.

53.    Deny.

54.    Deny.

55.    Deny.

## COUNT SIX – UNJUST ENRICHMENT

56.    Defendants incorporate paragraphs 1 to 8 and 11-26, above, as if fully set forth here.

57.    Deny Tides payment of the invoice price was a pre-payment. Admit the remaining allegations.

58.    Deny.

7

59.    Deny.

## AFFIRMATIVE DEFENSES

2Skebengas Company d/b/a InterGlobal Products ("InterGlobal") and Jack R. West, individually, erroneously referenced as doing business as InterGlobal Products, allege the following affirmative defenses with respect to the purported claims for relief alleged in the First Amended Complaint.

### First Affirmative Defense

As a separate and affirmative defense to the First Amended Complaint, and to each purported cause of action thereof, Jack R. West asserts the complaint fails to state any claims upon which relief can be granted. Jack R. West does not own or have any individual ownership interest in the fictitious entity doing business as InterGlobal Products. 2Skebengas Company is the actual owner of the fictitious entity, InterGlobal Products. 2Skebengas Company has actually performed all the legal, contractual and financial functions for InterGlobal Products since its inception to date. The lease for the premises in which InterGlobal Products does business is in the name of 2Skebengas Company. All bank accounts used by InterGlobal Products for any transactions are in the name of 2Skebengas Company. Payroll, taxes and all other financial obligations are paid by 2Skebengas Company. Tax returns for the fictitious entity are filed in the name of 2Skebengas Company. The actual transactions associated with Exhibit "A" herein, including the arrangement for the purchase and shipment of the chia seeds, were undertaken in the name of 2Skebengas Company. Jack R. West is an employee of 2Skebengas Company. He does not receive any compensation directly from the fictitious entity. Accordingly, Jack R. West cannot legally be liable for any of the causes of action asserted in the First Amended Complaint stemming from the contract between Tides and InterGlobal Products attached hereto as Exhibit "A" because InterGlobal product was actually owned by 2Skebengas Company.

### Second Affirmative Defense

Unclean Hands. The actions of the Plaintiff should bar recovery in this action. The Plaintiff's wrongful conduct precludes it from seeking relief and the claim should be dismissed.

8

### Third Affirmative Defense

Fraud.  The actions of the Plaintiff should bar recovery in this action.  The Plaintiff's wrongful conduct precludes it from seeking relief and the claim should be dismissed.  If, and to the extent that, the subject chia seeds were contaminated, Plaintiff and/or its agents and employees caused any such contamination.  Further, Plaintiff wrongfully attempted to avoid responsibility for its actions by casting blame for any contamination onto the Defendants.  The Plaintiff and its agents and/or employees manipulated the findings of the so-called audit investigation to make it appear as if Defendants were at fault for any contamination.  The Plaintiff misrepresented its contractual agreements with alleged third party buyers of the chia seed and behaved fraudulently with the disposition of the supposedly contaminated chia seeds.

### Fourth Affirmative Defense

Plaintiff breached the contract referenced in Exhibit "A" by failing to take delivery of the chia seeds within the contractual deadline of August through December 2015.

### Fifth Affirmative Defense

Plaintiff's claims are barred for failure to join necessary or indispensable parties, namely the truck driver who maintained the chia seeds in his exclusive possession after accepting delivery of the seeds and acknowledging that they were in good condition.

### Sixth Affirmative Defense

Per Federal Rule of Civil Procedure 19(a), the Complaint fails to join the truck driver who picked up the chia seed from the Hillside warehouse.  The truck driver signed a bill of lading when he picked up the seed which indicated the seeds were in good condition.  Accordingly, the alleged defect in the condition of the seeds, if any actually existed, occurred while they were in the trucker's control.

9

### Seventh Affirmative Defense

Plaintiff's damages, if any, were the result of conditions or occurrences subsequent to the pick-up of the chia seeds at the Hillside warehouse which were unrelated to InterGlobal's conduct.

### Eighth Affirmative Defense

Plaintiff failed to act in a commercially reasonable manner and violated the requirements of Uniform Commercial Code § 2-604 regarding its obligations concerning the salvage of rightfully rejected goods. Tides claimed it destroyed all of the chia seed rather than storing them for InterGlobal's account or reshipping the seeds to it or reselling them for InterGlobal's account

### Ninth Affirmative Defense

Plaintiff failed to give proper, reasonable notice of the purported breach of the contract and breach of any warranties regarding the seeds.

### Tenth Affirmative Defense

Plaintiff failed to mitigate its damages by selling any undamaged chia seed or by taking reasonable steps to reduce the costs it allegedly incurred in connection with the transaction.

### Eleventh Affirmative Defense

Plaintiff failed to "cover" its damages by making a good faith purchase of or contract to purchase chia seeds in substitution for those due from InterGlobal.

### Twelfth Affirmative Defense

Plaintiff's failure to preserve any of the supposedly contaminated chia seed constitutes spoliation of evidence.

**WHEREFORE,** Defendants, 2Skebengas Company d/b/a InterGlobal Products ("InterGlobal") and Jack R. West, individually, pray for judgment as follows:

1. That Plaintiff take nothing by reason of its First Amended Complaint, that the First Amended Complaint be dismissed in its entirety with prejudice, and that judgment be entered for Defendants;

2. That Defendants be awarded their reasonable costs and attorneys' fees;

3. Defendants demand a trial by jury on all issues so triable; and,

4. That Defendants be awarded such other and further relief as the Court deems just and proper.

**I CERTIFY** that a copy of the foregoing has been furnished to Robert D. Sowell, BAKER HOSTETLER, LLP by electronic mail delivery at rsowell@bakerlaw.com on this 19th day of December, 2016.

**MANDER LAW GROUP**
14217 Third Street
Dade City, Florida  33523
Tel:   (352) 567-0411
Fax:   (352) 567-8457

*/s/ A.R. Mander, III*
A. R. Mander, III, Esq.
Florida Bar No. 0230405
Primary Email:
arm4law@manderlawgroup.com
Secondary Email:
mwhite@manderlawgroup.com

Misty Morgan Vianna, Esq.
Florida Bar No. 0095219
Primary Email:
mvianna@manderlawgroup.com
Secondary Email:
mwhite@manderlawgroup.com
Attorneys for Defendants

11

**Lourdes Alers**

| | |
|---|---|
| **From:** | Justin West |
| **Sent:** | Sunday, November 29, 2015 9:25 PM |
| **To:** | Steve Coffman |
| **Cc:** | John Lombardo; Lourdes Alers; Jack West |
| **Subject:** | Re: Inquiry: Drayage & Dry Storage in NJ |
| **Attachments:** | SKMBT_C224e15112918410 (1).pdf |

Dear Steve,

Hope you had a great Thanksgiving!

Please find attached Delivery Order for the first container of Organic Chia.
Kindly confirm when you can have this picked up from the port.

Thanks and best regards,

Justin West
InterGlobal Products
Tel: 352-567-8000

---

**From:** Steve Coffman
**Sent:** Friday, October 30, 2015 2:53 PM
**To:** Justin West
**Cc:** John Lombardo; Lourdes Alers; Jack West
**Subject:** Re: Inquiry: Drayage & Dry Storage in NJ
We will be ready.

Regards,

Steve Coffman
Hillside Warehouse and Trucking
20 Northfield Avenue
Edison NJ 08837
Phone# 732-225-1271
Fax# 732-225-1810

On Fri, Oct 30, 2015 at 2:43 PM, Justin West <justinwest@interglobalproducts.com> wrote:

Good afternoon Steve,

Hope all is well!

Wanted to update you on our first incoming shipment of the Organic Chia seeds. Container is on the water with ETA to New York of November 14.

EXHIBIT C

1

As discussed, we will request your help to dray the 40' dry container for intake to your warehouse, and distribute to final customer thereafter.

More details to follow as we get closer to arrival.

Thanks again, and best regards,

Justin West

InterGlobal Products

**From:** Steve Coffman [mailto:steve@hillsidewtc.com]
**Sent:** Thursday, September 17, 2015 12:09 PM
**To:** Justin West <justinwest@interglobalproducts.com>; John Lombardo <john@hillsidewtc.com>
**Cc:** Lourdes Alers <lourdes@interglobalproducts.com>; Jack West <jackwest@interglobalproducts.com>
**Subject:** Re: Inquiry: Drayage & Dry Storage in NJ

Justin

Thank you for the opportunity! Look forward to doing business with you.

Regards,

Steve Coffman

Hillside Warehouse and Trucking

20 Northfield Avenue

Edison NJ 08837

Phone# 732-225-1271

Fax# 732-225-1810

On Thu, Sep 17, 2015 at 11:49 AM, Justin West <justinwest@interglobalproducts.com> wrote:

Hi Steve,

Thanks for your confirmation on the FSC and minimum storage, both well understood.

We'd like to engage your services for this program of 5 containers, approx. arrival and distribution schedule is noted below:

1st container (20 pallets): Arriving end-October, distributed within 30 days

2nd container (20 pallets): Arriving end-November, "

3rd container (20 pallets): Arriving end-December, "

2

4th container (20 pallets): Arriving end-January, "

5th container (20 pallets): Arriving end-February, "

Please let me know if we need to complete an application to open our account with you.

Thanks and best regards,

Justin West

InterGlobal Products

**From:** Steve Coffman [mailto:steve@hillsidewtc.com]
**Sent:** Wednesday, September 16, 2015 11:47 AM
**To:** Justin West <justinwest@interglobalproducts.com>
**Subject:** Re: Inquiry: Drayage & Dry Storage in NJ

Fuel is currently 28%. Sorry but the minimum storage does not include drayage.

Regards,

Steve Coffman

Hillside Warehouse and Trucking

20 Northfield Avenue

Edison NJ 08837

Phone# 732-225-1271

Fax# 732-225-1810

On Wed, Sep 16, 2015 at 11:33 AM, Justin West <justinwest@interglobalproducts.com> wrote:

Hi Steve,

Thanks for your quote.

Can you confirm the current FSC to have an idea of this additional cost?

Concerning the storage at $500 minimum per month, in our case we'll have 20 pallets coming in at $21.00/pallet = $420. Considering that the drayage charge will take us over the $500 minimum, does the storage for 20 pallets stay billed at $420?

Thanks again!

Justin West

InterGlobal Products

**From:** Steve Coffman [mailto:steve@hillsidewtc.com]
**Sent:** Wednesday, September 16, 2015 11:31 AM
**To:** Justin West <justinwest@interglobalproducts.com>
**Cc:** Jack West <jackwest@interglobalproducts.com>; Lourdes Alers <lourdes@interglobalproducts.com>
**Subject:** Re: Inquiry: Drayage & Dry Storage in NJ

Pleasure speaking with you also. Rates are as follows:

Dray from NJ piers.........................................$275.00 plus fsc

Chassis rental .............................................$27.00 per day

PNCT split chassis fee..................................$75.00 if applicable

Dray from GCT NY add $125.00

Two hours free inside the pier and $60.00 per hour after.

Handling in....................................$5.00 per pallet

Handling out.................................$5.00 per pallet

Rates based on full pallet quantities in and full pallet quantities out.

Extra labor for restacking, banding etc ...$36.75 per man hour

Receiving report fee......................$5.00

Bill of lading fee...........................$5.00

Storage

Pallets stacked one high.............................$21.00 per pallet per month

Pallets stacked two high.............................$10.50 per pallet per month

Minimum monthly storage is $500.00

Storage billed upon receipt and the first of each month.

All rates based on availability and info provided.

Thank you for the opportunity and please let us know if you have any questions in regard to our rates or services.

Regards,

Steve Coffman

Hillside Warehouse and Trucking

20 Northfield Avenue

Edison NJ 08837

Phone# 732-225-1271

Fax# 732-225-1810

On Wed, Sep 16, 2015 at 11:12 AM, Justin West <justinwest@interglobalproducts.com> wrote:

Good morning Steve,

Great speaking with you just now. I was given your information from Jason at CIL Forwarding.

I'd like to ask for your rates to help us with an upcoming import/distribution program in NJ. Please let me know your rates for the following services:

-Drayage of 40' dry containers from Port New York to your facility

-Unloading of 20 pallets per container, stacked with 40 x 50 pound net bags (net weight per pallet 2204.62 pound)

-Dry storage in NJ Warehouse

The containers will arrive approx. every 30 days, and customer will make pickup of all material from 1 container at your facility before the next container arrives.

I look forward to your news on this inquiry.

Thanks and best regards,

Justin West

InterGlobal Products

37809 Howard Avenue

Dade City, FL 33525

Tel: 352-567-8000

Mob: 305-978-9692

Skype: justintwest

www.interglobalproducts.com

5